# EXHIBIT D

 

LEXSEE 2001 US APP LEXIS 3128

Analysis
As of: Dec 22, 2009

MARJORIE HOLESAPPLE, Plaintiff-Appellant, v. DANIEL BARRETT, III, Defendant-Appellee.

No. 00-1537

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

5 Fed. Appx. 177; 2001 U.S. App. LEXIS 3128

January 26, 2001, Argued
March 2, 2001, Decided

**NOTICE:** [**1] RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *2001 U.S. App. LEXIS 10052.*

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CA-99-1427-S).

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendant in admiralty for negligence. The United States District Court for the District of Maryland, at Baltimore, entered summary judgment in favor of defendant. Plaintiff appealed.

**OVERVIEW:** Plaintiff alleged that defendant, her son-in-law, was negligent in the operation of his small power boat during a family outing, causing plaintiff's injuries. Plaintiff appealed the district court's refusal to consider plaintiff's expert's affidavit and entry of summary judgment for defendant. The present court affirmed. The district court did not abuse its discretion in holding that the expert's opinion in the present matter was unreliable. The expert's opinion did not rely on any of the standard indicia associated with the incident in question. There was no mention of weather reports, wave height, or complaints from other vessels in the immediate area. Without the expert opinion, the only evidence of defendant's negligence was plaintiff's testimony that defendant (1) should have gotten her consent before entering the ocean, (2) was operating at an excessive speed, (3) failed to keep a proper lookout, and (4) failed to warn. There was insufficient evidence from which to establish a standard of care against which to measure defendant's conduct.

**OUTCOME:** Judgment was affirmed. There was no showing of the appropriate standard of care, the assertions of lack of due care come entirely from the opinion of plaintiff, and plaintiff presented no more than, at best, a mere scintilla, or less, of evidence of defendant's negligence.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Evidence > Testimony > Experts > Admissibility*

Case 4:09-cv-00003-BR   Document 40-5   Filed 01/01/10   Page 2 of 5

[HN1] Decisions regarding admissibility of expert testimony are reviewed for abuse of discretion.

*Evidence > Scientific Evidence > Daubert Standard*
*Evidence > Testimony > Experts > Daubert Standard*
[HN2] A district court's Daubert gatekeeping obligation applies not only to scientific testimony but to all expert testimony, and the inquiry must be tied to the facts of a particular case.

*Evidence > Testimony > Experts > Daubert Standard*
[HN3] With respect to the admission of expert testimony, reliability is to be determined by the "principles and methodology" employed by the expert. The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.

*Evidence > Testimony > Experts > Daubert Standard*
[HN4] Although experts with specialized knowledge often extrapolate from existing data, nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.

*Evidence > Testimony > Experts > General Overview*
[HN5] It still is a requirement that expert opinion evidence be connected to existing data by something more than the "it is so because I say it is so" of the expert.

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN6] In reviewing the district court's order granting summary judgment to the defendant, the appellate court must perform a de novo review of the record below to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of her claim at trial.

*Admiralty Law > Personal Injuries > Maritime Tort Actions > Negligence > Invitees, Passengers & Stowaways*
*Admiralty Law > Shipping > Carrier Duties & Obligations > Passengers*
*Torts > Transportation Torts > Watercraft > General Overview*
[HN7] To prevail in a negligence action in admiralty, a plaintiff must demonstrate that the boat owner breached the duty of exercising reasonable care under the circumstances that he owes to boat passengers.

**COUNSEL:** ARGUED: John Walter Sippel, Jr., OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellant.

Amy Leete Leone, MCCARTHY, WILSON & ETHRIDGE, Rockville, Maryland, for Appellee.

ON BRIEF: Manfred W. Leckszas, OBER, KALER, GRIMES & SHRIVER, P.C., Baltimore, Maryland, for Appellant.

Robert B. Hetherington, MCCARTHY, WILSON & ETHRIDGE, Rockville, Maryland, for Appellee.

**JUDGES:** Before NIEMEYER and MICHAEL, Circuit Judges, and James H. MICHAEL, Jr., Senior United States District Judge for the Western District of Virginia, sitting by designation.

**OPINION**

[*178] PER CURIAM:

Plaintiff-Appellant Marjorie Holesapple filed the instant negligence lawsuit in admiralty against her son-in-law, defendant-appellee Daniel Barrett, III, ("Barrett") for injuries Holesapple suffered during a family outing on Barrett's small power boat. Holesapple appeals the [**2] district court's refusal to consider Holesapple's expert's affidavit and entry of summary judgment for Barrett.

I

On January 10, 1998, Holesapple, together with her son, Alvin Pumphrey, daughter, Linda Barrett, and son-in-law, Barrett, embarked on a day cruise in Barrett's 24-foot recreational powerboat, the Y KNOT. The Y KNOT is capable of reaching fifty miles per hour, but her planing speed is approximately fifteen miles per hour. Although no official weather reports have been submitted, the weather that day apparently began with a hazy morning with possible winds, and warmed up to approximately eighty degrees.

Holesapple believed the cruise would be limited to Florida's Intercoastal Waterway (ICW), but after several hours in the ICW and a stop for lunch, Barrett drove the Y KNOT through an inlet that led to the Atlantic Ocean. Holesapple was aware that the boat had left the ICW and was venturing into the Atlantic, but alleges that there was

no discussion about the trip out of the ICW, including no word of concern from Holesapple to any family member, nor any request that Barrett return to the ICW. Holesapple testified that she was terrified, but said nothing. Holesapple had been [\*\*3] a passenger on Barrett's boats on several prior occasions, and Barrett had approximately thirty-three years of boating experience.

As the boat traveled out in the ocean, there were approximately sixty to seventy other boats in sight, including an inflatable one. After about fifteen minutes into the Atlantic, the water became rougher and, upon suggestion from Linda Barrett, Barrett began to return to shore, allegedly continuing to drive the boat at a speed of fifteen to twenty miles per hour. On the return, Barrett and Pumphrey saw three large waves that "came out of nowhere" and, within one to two seconds, the Y KNOT hit the first wave and apparently went airborne for a moment. By the time the boat had reached the third wave, Barrett had slowed the boat down to an idle to soften the impact. No verbal warning was given in the one to two seconds between when Pumphrey and Barrett saw the waves and when the Y KNOT hit the waves. Just prior to the encounter with the waves, Holesapple was standing near the front of the boat, bracing herself by holding onto a bar. However, Holesapple was thrown to the deck during the encounter, along with Pumphrey and Linda Barrett. Holesapple suffered two [\*\*4] broken ankles [\*179] and filed the instant negligence action against Barrett.

II

Holesapple appeals the district court's denial to consider the affidavit of admiralty expert Jack Riggleman, in deciding the parties' cross motions for summary judgment. [HN1] Decisions regarding admissibility of expert testimony are reviewed for abuse of discretion. *See General Elec. Co. v. Joiner, 522 U.S. 136, 142-43, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997)*. [HN2] A district court's gatekeeping obligation under *Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993)*, applies not only to scientific testimony but to all expert testimony, and the inquiry must be tied to the facts of a particular case. *See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-52, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999)*.

In the instant matter, the district court found that Holesapple made a prima facie showing of Riggleman's qualification to provide expert testimony on the operation of small vessels, but that Riggleman's expert opinion in this matter was unreliable. The district court reasoned that the opinion was based purely on conjecture and post hoc [\*\*5] reasoning, and was unsupported by scientific analysis, attempts at reconstruction, or reference to any proper authority for operations of small vessels. The appellant argues that the factors employed by the district court were improper because Riggleman has specialized knowledge, and nothing more should be required to render an opinion on good seamanship. The district court's reliance on such factors, however, reflects a position contrary to that of the appellant as to the bearing of those factors on the reliability determination.

[HN3] Reliability is to be determined by the "principles and methodology" employed by the expert. *See Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)* (quoting *Daubert, 509 U.S. at 594-95*). "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire, 526 U.S. at 152*. The appellant's arguments about the irrelevance of the factors considered by the district court are unpersuasive. [HN4] Although experts with specialized knowledge often extrapolate from existing data, as the Supreme Court observed, [\*\*6] "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert." *Kumho Tire, 526 U.S. at 157* (finding no abuse of discretion in rejecting opinion of expert with specialized knowledge) (quoting *Joiner, 522 U.S. at 146*). The opinion below reflects a conscious attempt to strike a balance between evidentiary rules regarding the admissibility of an expert opinion, and the *Kumho-Daubert* gatekeeping function of the district court to ensure that such opinion is reliable.

In looking at the affidavit of the tendered expert, it is of some importance to know that he states that "in forming my opinion on the cause of this accident, I relied on my experience as a recreational and commercial boat operator, race boat driver, test boat driver, and instructor." The quotation is characteristic of the opinion rendered by the expert, in that throughout it reflects his opinions, without relying on any of the standard indicia associated with this particular accident. There is no mention of his consulting weather reports available at the time, [\*\*7] testimony as to wave height, and the fact that there were a number of other boats in the area [\*180] immediately around the boat on which the plaintiff was riding at the time of the accident. The record reveals no other complaints of substance from these other vessels. All of these factors should have been considered by the expert, in order to show that he had formed an opinion based on the facts of the particular incident rather than making an "opinion" judgment based entirely on what he considers to be his experience, together with having reviewed the depositions. As noted above, [HN5] it still is a requirement that the expert opinion evidence be connected to existing data by something more than the "it is so because I say it is so" of the

expert. This affidavit presents an almost perfect example of an *ipse dixit* opinion. When this is combined with the fact that the district court is granted "considerable leeway" in deciding whether the expert testimony is reliable enough to justify admission, one must conclude that the district court's denial of the expert's affidavit was proper and was not an abuse of discretion.

III

[HN6] In reviewing the district court's order granting summary judgment to [**8] the defendant, we must perform a de novo review of the record below to determine "whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial." *Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993)*. As the nonmoving party, Holesapple may not simply rest on her pleadings or on conclusory allegations but must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*.

[HN7] To prevail in a negligence action in admiralty, a plaintiff must demonstrate that the boat owner breached the duty of "exercising reasonable care under the circumstances" that he owes to boat passengers. *Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959)*. Holesapple contends that there are genuine disputes as to whether the defendant breached his duty of reasonable care, by: (1) not obtaining the plaintiff's consent before he went into the ocean; (2) driving his boat at an excessive speed under the circumstances; (3) failing to keep a proper lookout; (4) failing to warn of three large waves [***9] which the boat struck in succession; and (5) failing to check the marine forecasts and marine conditions prior to heading out to sea. Without any form of expert opinion evidence in the case, the plaintiff is forced back on her own testimony as to the failure of the defendant to get her consent before entering the ocean, excessive speed, failure to keep the proper lookout, and failure to warn. While there are bits of evidence which tend to corroborate the evidence of the plaintiff in the case, the body of that evidence comes from the testimony of the plaintiff, which may well be characterized by her answers in deposition, where, when asked to state what her beliefs were as to the negligence of the defendant, her reply was throughout, "Well, I just was hurt." Such testimony as that outlined above simply is not sufficient to establish a standard of care against which to measure the defendant's conduct. It is apparent from those bits of testimony that the assertions of lack of due care come entirely from the opinion of the plaintiff, but again, there is no showing of the appropriate standard of care. After giving full consideration to the parties' arguments, resolving all reasonable facts [**10] and inferences in favor of the appellant, we cannot find that Holesapple has presented any more than, at best, a mere scintilla, or less, of evidence of Barrett's negligence.

[*181] Accordingly, we affirm the district court's grant of summary judgment to Barrett.

*AFFIRMED*